May it please the Court, Jared Cantor on behalf of the National Labor Relations Board. Your Honors, the Union just was decrying that the Board has created a rule here, but then I also understood him to say that there should be some bright-rind rule here, that five minutes should be a cutoff. And I think that the discussion that just preceded me speaking illustrates the extent to which the whole sequence of events has to be looked at, that the Board talks about the totality of the circumstances, it talks about the particular circumstances here, and that it was not finding, it specifically rejected the contention that it was creating a per se rule here, that any amount of time of blocking is going to be an unfair labor practice. What it was looking at is we have a year of this organizational picketing going on. How many times did they block this entrance? Five times or something like that? We have ten specific dates, Your Honor. On the very first date, we have 15 to 20 cars blocked between three and four minutes each. On the second instance, we have six or seven cars blocked for two — I mean, I haven't added up all the minutes, but I think it adds up to several hours potentially worth of delay over these ten dates. And then it stopped. The record discloses that during the course of litigation, the union decided to stop with its deliberate blocking. And I want to be clear, the Board's decision here is not, does not give the drivers of cars license to just drive through the picketers because they want to leave. The Board's decision is that where the union's admitted purpose is to annoy and to draw attention to themselves, that they cannot, and the Board talked about this in the Dell Card case, the Local 19 case, that the union cannot arrogate to itself the right to determine when and how long that people are going to be delayed to pass. And this is that important point here about the Board not creating a rule. It's not that essentially some car came up, and for safety considerations, they stopped the car while the people cleared the crosswalk, just like you would for normal pedestrians. The driver stops, makes sure the pedestrians are no longer in the crosswalk, and would go. Here, the whole point is to stop the cars and then to go around and around and around. And as the record shows, we have one- to two-minute intervals all the way up to some four-minute intervals. And it's deliberate, and it was repeated both during each one of these days sometimes and then, again, over the course of these ten days. I haven't added up the number of incidents either, but it's several dozen. Was there ever any violence in any of these picketings that the Board understood occurred? Well, the Board's decision, and this was talked about earlier, I should divide this into two parts. The Board decision does not mention, I guess it depends what the meaning of violence would be. There are instances talked about where drivers were getting aggravated and accelerated dangerously towards the picket line when they started growing frustrated that they couldn't leave. I don't know local law whether that would be considered a potentially criminal act, but there's that instance. There are the instances that were discussed about numerous cars driving the wrong way in this one-way Port Cochere to exit. And the record does disclose a few other instances that I think supports the Board's finding here about the particular circumstances. So the company security officer testified to an incident where a guest in a picketer got in a tussle over a picket sign and a police officer ended up being hit while they were tussling. One of the union's captains testified to someone pouring water on him out of the hotel. And so this was certainly at the very first date that we talk about that, the August 18th date where you have, that's the one where there's 160-some picketers, you have three picket lines going across the street at the entrance and the exit, and that kicks off the whole Board's findings here, that when you look at all of these dates and everything that was going on, the union would like to portray this, and I think they talk about, this is run-of-the-mill picketing, and that there was nothing else going on here that would be restraining or coercive. And I would respectfully submit that not just, obviously, the blocking is very supportive of the Board's finding, and essentially all these facts are undisputed, and then you add in everything going on with the chanting and the bullhorns, these other instances of guests behaving rashly or potentially violently, that there, I would certainly submit, was tension in the air, that this was not a day at the beach at this hotel for essentially a year and then some. Whenever these were going on, I think, and the union accuses the company of calling the police as some type of bootstrapping method, but I would respectfully push back on that and say that it was very prudent and warranted here. And the fact that the union doesn't think that the police were necessary, I think, doesn't really count in the sense of the fact that they were there and that they didn't come and then just say this is ridiculous and leave. Do you have another Board case where you have such short interruption as here as discussed, albeit over a period of time where the Board made a comparable finding? Yes, Your Honor. I mean, I think the chief decisions we would rely on, and we talk about them in our brief, are the local union number 17 case, that's the Hertz one, where during the course of a strike-related picketing that was over several months, there were numerous occasions and, again, the intervals there were 5 to 10 minutes and there were three incidents of 30 to 45 minutes. I would then point to the local 19, the Del Card case, and it's important. In that case, that there are essentially three different sites that were being picketed there, so you have to kind of look at each one because each one of those was a separate violation. And so at the Del Card employer location, there were five dates where we have numerous vehicles blocked and the average range there was 3 to 5 minutes. We have the Omni location where there was one date and only two vehicles are blocked and those were only 10 to 30 seconds, that they got there, they weren't letting them through, and then they left to call the police to then let them get through. And then at the third location, the Stong one, we only have one date where we have an employee-driven vehicle being blocked and then a van was blocked, and, again, that's that 3 to 5, I think it was 4 minutes for that location, exactly. In all these cases, it was a violation found by the board? Yes, Your Honor. And then the last one I would just briefly is the International Local 67 where we have two employees blocked between 2 and 3 minutes, we have a manager blocked four times for between 3 and 5 minutes, and then we have another employee blocked one time for 3 to 5 minutes. And so, you know, as an appellate lawyer, it's always great if you have a case that has every single fact that is in front of you, but that is, I would submit, the burden of appellate judges and appellate lawyers is that we never have, or very rarely do we have, that one perfect case because if I did have that one perfect case, then generally we don't wind up in the appellate courts, that once a party loses in front of the board, they accept that. But here, the board's decision, again, undisputed facts support it. I think, and I would argue and submit, that it is comfortably within the board's jurisprudence in this area. In fact, a decision not to find a violation here would, I think, really stick out. Accepting the union's arguments, this would be an outlier in the board's jurisprudence. If there are no further... I have one question. Is there a reason, if there is a crowded area, that it might come out differently than if it's a hotel way out someplace that's all by itself? That is, what did the board find was the crowding situation in this instance where there are a lot of vehicles around? Is this a very busy part of town? I think the point there would just be that the traffic backed up, and that goes to the fact that employees, even when they're not being blocked, are witnessing the effects of the union's conduct. And so certainly in an isolated location, maybe there wouldn't be traffic backs up, traffic backups, but here where there's a one-way street and you are, especially on that first date where you're preventing cars from getting into the hotel, that that was a direct result of that. Thank you. Thank you, Your Honors. Thank you, Your Honors. To address the cases that Mr. Cantor cited, the board cases with the brief picketing delays, those were all situations where there was a strike being conducted by the union. And a strike fundamentally changes the calculus with respect to Section 7 of the Act and, therefore, with respect to Section 8B1A. Employees are required to report to the union that employees have a Section 7 right not to participate in a strike, in other words, to break the strike. And when the union blocks strike-breaking employees from coming to work, that's really a direct restraint on their Section 7 rights. The union may not like it, but they've chosen to come to work. Was the purpose of the picketing to coerce the hotel or to coerce the employees to join the union? The purpose of this picketing here, Your Honor, was not to coerce anyone. It was organizational picketing. It was to share a message with the hotel. To recognize them? Not to recognize them, Your Honor. The picket signs advised the public that this hotel had no contract with the union. It's not union. And so it was what's called organizational picketing. It was to buoy the strength of the pro-union employees and also to advise the public that it was a non-union hotel. So you've got to look at Section 7 and the rights of those employees who are affected, the Section 7 rights. It doesn't have to do with traffic congestion. It doesn't have to do with dumping water on the picketers by hotel guests, which are matters of local concern. And that's really the issue here is that the Board has not shown which Section 7 rights of the valet employees were affected. Thank you. Thank you. Thank you both for the argument this morning. United here, Local 5 v. the NLRB is submitted.
judges: Siler, Wallace, McKeown